**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ILLINOIS INSURANCE GUARANTY FUND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 1:24-cv-01522 |
| | ) | |
| XAVIER BECERRA, in his official capacity as | ) | Judge: |
| Secretary of the United States Department of | ) | |
| Health & Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff ILLINOIS INSURANCE GUARANTY FUND ("IIGF") brings this action against Defendant XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health & Human Services (the "Secretary"), for judicial review of a final administrative decision under 42 U.S.C. §§ 405(g)–(h), 1395ii, and 1395ff(b)(1)(A).

## NATURE OF CASE

1.      Through this action, IIGF asks the Court to reverse an administrative decision entered on October 18, 2021 in the matter of Medicare Appeals Council Docket No. M-22-1770, ALJ Appeal No. 3-8630332306 (the "Decision"), which is attached as Exhibit A. In the Decision, the Administrative Law Judge ("ALJ") incorrectly determined that IIGF was a "primary plan" required to reimburse the federal government for certain "conditional payments" under the Medicare Secondary Payer ("MSP") statute, 42 U.S.C. § 1395y(b).

2.      The ALJ's Decision is based on legal error and not supported by substantial evidence. IIGF is a non-profit statutory entity that provides a limited form of protection to the public, as a source of last resort, when Illinois insurers are declared insolvent. IIGF is not a

"primary plan" as defined by the MSP statute. Thus, under the plain wording and purpose of the MSP, IIGF is not subject to the MSP's requirements for "primary plans."

3.      In *California Insurance Guarantee Association v. Azar*, 940 F.3d 1061 (9th Cir. 2019) ("*Azar*"), the United States Court of Appeals for the Ninth Circuit held that an analogous guaranty fund in California was not a "primary plan" under the MSP statute. (*See* Ex. B.)  This Court should reach the same conclusion as to IIGF and reverse the Decision here, in accordance with the reasoning and result of *Azar*.

## JURISDICTION AND VENUE

4.      The Court has original jurisdiction over the subject matter of this action pursuant to 42 U.S.C. §§ 405(g)–(h), 1395ii, and 1395ff(b)(1)(A), which waive the Defendant's sovereign immunity.

5.      The Decision is a final decision of the ALJ made after a proceeding to which the Secretary was a party, and the Secretary granted IIGF's request for escalation to federal district court pursuant to 42 C.F.R. § 405.1132(a)(2).

6.      Pursuant to 42 C.F.R. § 405.1132(b), IIGF commenced this action within 60 days after the Secretary mailed IIGF notice of its Order granting the request for escalation.  A copy of the January 18, 2024 notice is attached as Exhibit C (the "Notice").[1]

7.      The amount in controversy exceeds $1,840, as required by 42 C.F.R. § 405.1136(a)(1), given that the ALJ's Decision requires IIGF to reimburse the Secretary for $12,844.12.

---

[1] IIGF previously brought an action against the Secretary seeking a determination that IIGF was not a "primary plan" in connection with the MSP's quarterly reporting requirements.  The district court (Judge Robert W. Gettleman) dismissed the case on the grounds that IIGF had not yet exhausted the administrative process, and the Seventh Circuit affirmed. *See, e.g.*, *Ill. Ins. Guar. Fund v. Becerra*, 33 F.4th 916 (7th Cir. 2022).  The issue is now ripe for determination in connection with the ALJ's Decision here, where the administrative process has been exhausted, as confirmed by the Notice.

8.      Venue is proper in this District and before this Court pursuant to 42 C.F.R. § 405.1136(b)(1) because this is the judicial district in which IIGF resides.

9.      At the time of filing this Complaint, IIGF is sending a copy of the Summons and Complaint by certified mail to the General Counsel, Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201.

## PARTIES

10.     Plaintiff IIGF is a statutorily-created, involuntary, unincorporated association whose members consist of those insurers admitted to transact certain classes of insurance business in the State of Illinois.  Its principal place of business is located within the Northern District of Illinois at 150 South Wacker Drive, Suite 2970, Chicago, Illinois 60606.

11.     Defendant Xavier Becerra is the current Secretary of the United States Department of Health & Human Services ("DHHS").  In this capacity, the Secretary is responsible for the management and operation of DHHS, including the statutory provisions that are the subject of this lawsuit.  The Secretary is sued in his official capacity only pursuant to 42 C.F.R. § 405.1136(d)(1).

## GENERAL ALLEGATIONS

### A.      Background On IIGF.

12.     The Illinois Legislature created IIGF in 1971 to provide limited financial assistance to insureds and claimants in the event their insurers became insolvent.  IIGF depends on the Illinois Insurance Guaranty Fund Act, 215 ILL. COMP. STAT. 5/532 *et seq.*, for its existence and to define its powers, duties, and protections.  As a creature of state statute, IIGF has only those duties and obligations found in its enabling statute and interpretive case law.

13.      IIGF's statutory responsibilities are not co-extensive with the insolvent insurer's obligations under its policies—IIGF's responsibilities are more limited.  In this respect, IIGF is not the successor to the insolvent insurer; rather, a separate court-appointed statutory liquidator

administers the insolvent insurer's assets and liabilities pursuant to the state liquidation act. *See, e.g.,* 215 ILL. COMP. STAT. 5/187 *et seq.* Instead, IIGF acts as a financial safety net that is a source of last resort and limited relief for certain policyholders and claimants.

14.     IIGF's statute contains numerous provisions that impose reasonable limits on IIGF's benefits in order to conserve its resources for where the need is the greatest. IIGF is authorized only to pay and discharge certain "covered claims," as defined in its statute. 215 ILL. COMP. STAT. 5/534.3, 537.2. The definition of "covered claim" has several limitations that constrain and exclude coverage. The extent of IIGF's obligations turns upon the definition of "covered claim" and the statutory limitations and exclusions enumerated in IIGF's statute.

15.     The purpose of the statutory conditions and limitations is plain. By statute, IIGF administers a limited amount of funds, and therefore has limited capacity to absorb loss.

16.     IIGF derives its resources through assessments against member companies who pay contributions to IIGF. 215 ILL. COMP. STAT. 5/537.6. Ultimately, the costs of member contributions are passed along to the insurance-buying public in the form of higher premiums. Therefore, the burden of supporting insolvent insurers is ultimately borne by Illinois policyholders who indirectly fund "covered claims" through their premium charges.

**B.      The Secretary Does Not Assert "Covered Claims."**

17.     The Decision concerns the Secretary's demand that IIGF reimburse DHHS for certain "conditional payments" made under the MSP to or on behalf of claimant "J.A.," a Medicare beneficiary.

18.     But the Secretary does not qualify for payment from IIGF. Pursuant to its statutory obligations, as addressed above, IIGF may only pay the limited, statutorily defined "covered

claims" of insolvent insurers. The Secretary does not and cannot assert "covered claims" as defined by IIGF's statute.

19.     Among other reasons, a "covered claim" must arise under the policy of an insolvent insurer, as IIGF's statute only covers claims "for a loss arising out of and within the coverage of an insurance policy to which this Article applies" and "made by a person insured under such policy or by a person suffering injury or damage for which a person insured under such policy is legally liable." 215 Ill. Comp. Stat. 5/534.3(a).

20.     Here, the Secretary's demand for "conditional payments" does not arise under the coverage of any insurance policy issued by an insolvent insurer; it arises solely under the MSP statute. Additionally, the Secretary is not insured under the policy of an insolvent insurer, nor is he asserting a claim against a person insured under such a policy.

21.     IIGF's statute further expressly excludes claims asserted via subrogation, so the Secretary cannot assert any rights to a "covered claim" by subrogating to the rights of claimant J.A. or others. 215 Ill. Comp. Stat. 5/534.3(b)(v) (excluding "any claim for any amount due any reinsurer, insurer, insurance pool, or underwriting association as subrogated recoveries, reinsurance recoverables, contribution, indemnification or otherwise.").

22.     Because the Secretary does not and cannot assert a "covered claim" under IIGF's statute, Illinois law precludes IIGF from paying amounts to the Secretary.

**C.     The Medicare Secondary Payer Statute.**

23.     The Medicare Secondary Payer or MSP statute, 42 U.S.C. § 1395y(b), does not preempt Illinois law because IIGF is not a "primary plan" under the MSP, and therefore IIGF is not subject to the MSP requirements.

24.     The MSP statute provides that the Medicare Trust Fund shall be the "secondary" payer for medical items and services otherwise covered under Medicare where "payment has been

made, or can reasonably be expected to be made" under qualifying "primary plans." 42 U.S.C. §§ 1395y(b)(2)(A)(i)–(ii); 42 C.F.R. § 411.21.

25.    The term "primary plan" is pivotal to application of the MSP statute.  Congress permits the Secretary to make "conditional payments" for items or services, and then seek reimbursement from "primary plans."  42 U.S.C. § 1395y(b)(2)(B)(ii).  Under the MSP's terms, only "primary plans" are responsible to reimburse the federal government for "conditional payments."  *Id.*  The MSP requires "primary plans" to reimburse Medicare for any payment made by Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service."  *Id.*

26.    The MSP defines "primary plan" to include four categories—"[1] a group health plan or large group health plan, [2] a workers' compensation law or plan, [3] an automobile or liability insurance policy or plan (including a self-insured plan), or [4] no-fault insurance." 42 C.F.R. § 411.21; *see* 42 U.S.C. §§ 1395y(b)(2)(A)(i)–(ii).

27.    The Secretary apparently asserts that IIGF is "a workmen's compensation law or plan."  But IIGF does not fall within this category because it exists pursuant to a distinct statutory scheme created specifically for insurer insolvency, separate and apart from state workers compensation laws.  Unlike a "workmen's compensation law or plan," IIGF is triggered by an insurance insolvency, not by a work injury.  Moreover, IIGF is not an insurer.  It does not offer or sell workers compensation insurance—it issues no policies, collects no premium, and insures no risks.

28.    In these circumstances, IIGF does not qualify under the statutory definition of a "primary plan," and IIGF is not subject to the MSP requirements for "primary plans."

**D.    The Secretary Admits The Guaranty Funds In The Ninth Circuit Are Not "Primary Plans."**

29.    IIGF is part of a national state-based network of guaranty funds that exist by statute in each state under insurance insolvency laws similar to Illinois.

30.    On October 10, 2019, the United States Court of Appeals for the Ninth Circuit issued its opinion in *Azar* holding that the California Insurance Guarantee Association ("CIGA") is not a "primary plan" within the meaning of the MSP. *See Azar*, 940 F.3d at 1071. As a result, the Ninth Circuit held that CIGA has no obligation under the MSP to reimburse the Secretary for "conditional payments" made to Medicare beneficiaries. *Id.*

31.    The Secretary did not seek further appeal of the *Azar* decision.

32.    In December 2022, an administrative law judge followed *Azar* and likewise held that the Oregon Insurance Guaranty Association ("OIGA") was not a "primary plan" for MSP purposes and, as such, the Secretary could not recover "conditional payments" from OIGA. (*See* OIGA Decision, Ex. D.)

33.    Thereafter, the other guaranty funds in the Ninth Circuit sent letters to the Secretary asking him to confirm that, in line with *Azar*, they are not "primary plans." Upon information and belief, the Secretary issued near identical favorable responses to the guaranty funds in Hawaii, Alaska, Washington, Idaho, Montana, Nevada, and Arizona, stating:

> Because the Ninth Circuit's decision in *CIGA v. Azar* is binding on district courts in [the Ninth Circuit], we do not dispute your assertion that [the guaranty fund] is not a primary plan for purposes of the MSP Act . . . as the relevant statutory provisions have been interpreted by the Ninth Circuit. Therefore, as of the date of this letter, CMS will no longer consider [the guaranty fund] to be a primary plan for purposes of the MSP Act.

(*See* Exemplar Letter, Ex. E.)

34.     IIGF is the Illinois state-law equivalent to CIGA, OIGA, and the other guaranty funds in the Ninth Circuit. The reasoning and result of the Ninth Circuit's decision therefore also applies to IIGF, such that IIGF is also not a "primary plan" under the MSP.

**E.      The ALJ's Decision.**

35.     The ALJ's Decision concerns claimant "J.A." (referenced herein by his initials) who was insured under a workers compensation policy issued by Fremont Indemnity Company ("Fremont") for a work injury he suffered in December 1995.

36.     When Fremont was declared insolvent in July 2003, IIGF thereafter began to adjust and pay the statutorily defined "covered claims" to eligible insureds and claimants, including J.A.

37.     The Secretary demanded that IIGF also separately reimburse DHHS for certain "conditional payments" made on behalf of J.A. for medical services provided after April 2004.

38.     IIGF objected to that demand, and IIGF's objection proceeded through the federal government's administrative review process. The end result of that process is the ALJ's Decision.

39.     In the Decision, the ALJ recites the "Applicable Law and Policy," including that Medicare is not responsible when there is a "primary plan," and the ALJ quotes the statutory definition of "primary plan" contained in 42 U.S.C. §1395y(b)(2), cited above.

40.     The ALJ then finds that "Medicare is the secondary payer" and that IIGF "remains liable for the charges," which totaled $12,844.12. (*See* Ex. A.)[2]

41.     Although IIGF presented the ALJ with the *Azar* decision in December 2019 very shortly after it was issued—and IIGF urged the ALJ to follow *Azar* on grounds that IIGF, like

---

[2] The ALJ also considered the issue of whether the charges for J.A.'s treatment after April 2004 were related to his 1995 work accident. The ALJ finds that the charges were related. IIGF does not challenge that determination for purposes of this judicial review. Rather, IIGF seeks judicial review solely with respect to the issue of whether the ALJ erred when he treated IIGF as a "primary plan" under the MSP.

CIGA, was not a "primary plan"—the ALJ did not mention *Azar* in his decision entered two years later on October 18, 2021.

42.     The ALJ erred when he declined to follow the reasoning and result of *Azar*.  The Court should correct this error on judicial review and find that IIGF has no obligation to reimburse the Secretary for his demand.

## COUNT ONE
## CLAIM FOR JUDICIAL REVIEW
### 42 U.S.C. §§ 405(g)–(h), 1395ii, 1395ff(b)(1)(A)

43.     IIGF incorporates by reference each and every allegation in Paragraphs 1 through 42 as though fully set forth herein.

44.     On judicial review, this Court should determine that the ALJ's Decision is based upon or contains legal error and is not supported by substantial evidence as required by 42 U.S.C. § 405(g) and applicable law.

45.     The Secretary does not assert a "covered claim" against IIGF under its authorizing Illinois statute.

46.     IIGF's statute is not preempted by the MSP statute because IIGF is not a "primary plan" as defined by the MSP.  IIGF is therefore not subject to the MSP requirements for "primary plans."

47.     The ALJ's Decision should be reversed.

## PRAYER FOR RELIEF

**WHEREFORE**, IIGF prays for judgment as follows:

A.     Reversing the Decision;

B.     Awarding IIGF's costs of suit incurred herein as allowed by law; and

C.     Awarding such other and further relief as the Court deems just and proper.

Dated:  February 23, 2024           ILLINOIS INSURANCE GUARANTY FUND

By:  */s/ Julie L. Young*
           One of Its Attorneys

Julie L. Young
jyoung@lockelord.com
Rowe W. Snider
rsnider@lockelord.com
Heidi L. Brady
heidi.brady@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 443-0254
Facsimile:  (312) 896-6254