IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS INSURANCE GUARANTY FUND, | ) ) ) | |
| Plaintiff, | ) ) | No. 24 C 1522 |
| v. | ) ) | Judge Robert W. Gettleman |
| XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health & Human Services, Defendant. | ) ) ) ) ) | |

## MEMORANDUM OPINION & ORDER

The Illinois Insurance Guaranty Fund ("IIGF") brings this one count complaint for judicial review of an ALJ's decision under 42 U.S.C. § 405 (g), claiming that the ALJ's decision in favor of Xavier Becerra, in his official capacity as Secretary of the United States Department of Health & Human Services, is based upon legal error. IIGF moved for summary judgment (Doc. 22). In response, the defendant filed a cross-motion for judgment on the administrative record (Doc. 28). For the reasons explained below, the court grants IIGF's motion for summary judgment and denies defendant's cross motion for judgment on the administrative record.

## BACKGROUND

This case is a dispute about who must pay for a twenty-six-year-old medical bill. In 1998, J.A., a Medicare beneficiary, was injured in a workplace related accident and was covered by a workers' compensation plan issued by an insurer that became insolvent. J.A. received medical treatment for the injury. Medicare conditionally paid $12,844.12 for that treatment.

Under the Medicare Secondary Payer statute ("MSP"), 42 U.S.C. §1395y(b), enacted to

1

help save the program money, Medicare is designated as the secondary payer for certain of its beneficiaries. Being the secondary payer means that Medicare is precluded from providing benefits that could be paid by another primary insurance plan. To avoid leaving beneficiaries in the lurch while primary plans and Medicare determine who bears the ultimate payment responsibility, the Medicare program makes timely, conditional payments to cover the beneficiary's treatment. These conditional payments are subject to reimbursement by a primary plan that "has or had a responsibility to" pay for the medical item or service that Medicare conditionally paid for. 42 U.S.C. § 1395y(b)(2)(B)(i)-(ii). Medicare's payment for J.A.'s workplace related injury was one such conditional payment that defendant now seeks to recover from IIGF, which defendant alleges is a primary plan.

The single key question in this case is whether IIGF is a "primary plan" under the MSP. Under the MSP statute, only primary plans are required to reimburse the Department of Health and Human Services ("DHHS"). 42 U.S.C. § 1395y(b)(2)(B)(ii) ("[A] primary plan [ ] shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.").

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Austin v. Walgreen Co., 885 F.3d 1085, 1087 (7th Cir. 2018). Defendant admits all facts asserted by IIGF; there is no factual dispute. The only issue is whether IIGF is a "primary plan" under the MSP statute as a matter of law.

2

IIGF argues that it is not a primary plan. IIGF is not an insurer. It issues no policies, collects no premiums, and insures no risks. Instead, IIGF is a guaranty fund and a creature of the authorizing Illinois statute that created it, 215 ILCS 5/532 et seq. IIGF is a part of a larger statutory scheme in Illinois that governs situations when an insurer becomes insolvent. Under the insolvency scheme, the Director of the Illinois Department of Insurance, as a separate court-appointed statutory liquidator, administers the insolvent insurer's assets and liabilities. 215 ILCS 5/187 et seq. IIGF's role in this scheme is only to pay "covered claims" as defined in the statute.

IIGF argues that its function in this state statutory scheme makes it a poor fit for the definition of a "primary plan" under the MSP statute:

> [T]he term "primary plan" means a group health plan or large group health plan…and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance. 42 U.S.C. § 1395y(b)(2)(A)(ii).

IIGF contends that the only relevant category in the statutory definition is a "workmen's compensation law or plan," which IIGF is not. It does not issue workers' compensation insurance or collect premiums for workers' compensation insurance. IIGF points to a case in the Ninth Circuit that held that California's Insurance Guarantee Association ("CIGA"), an entity similar to IIGF, "is not a primary plan, and specifically not a 'workmen's compensation law or plan.'" CIGA v. Azar, 940 F.3d 1061,1063 (9th Cir. 2019).

The court agrees with IIGF. The Seventh Circuit has recognized that "[a]s a matter of state law, the [IIGF] is considered a source of last resort." IIGF v. Becerra, 33 F.4th 916, 919 (7th Cir. 2022) (internal quotations omitted). As a matter of plain meaning, a "source of last resort" is a poor fit for a "primary plan." See CIGA v. Azar, 940 F.3d at 1069 (explaining that "[i]t makes little sense to interpret the statutory phrase 'primary plan' to refer to a payer of last resort."). The statutory definition of "primary plan" in the MSP statute renders the fit even

3

worse. A "source of last resort" is not a good fit for any of the terms contained in the MSP's definition of a primary plan. The statute does not contain language indicating that the list of terms in the definition is non-exhaustive (for example if "such as" preceded the list). Thus, for IIGF to qualify as a "primary plan," it must fit into one of the terms listed in the statutory definition.

Of the terms in the statutory definition, the term that best fits IIGF's position in the facts of this case is a "workmen's compensation law or plan." But, as IIGF correctly points out, IIGF's obligations are not triggered by a worker's injury. See 215 ILCS 5/537. Instead IIGF's obligations are triggered by an insurer's insolvency. IIGF does not become obliged to pay for workers' compensation expenses without the occurrence of an intervening event—insolvency—that has nothing to do with workplace injuries. See CIGA, 940 F.3d at 1070. Consequently, IIGF is not a "workmen's compensation law or plan."

Without a theory on how IIGF can fit within the MSP statute's definition of a "primary plan," defendant leans heavily on language in the Illinois statute creating IIGF. According to that statute, IIGF "shall be deemed the insolvent company to the extent of the Fund's obligation for covered claims." 215 ILCS 5/537.4. Defendant argues that because IIGF is required to step into the shoes of an insolvent company that would qualify as a primary plan, IIGF is itself a primary plan. To support this position, defendant points to a case in the First Circuit, which held that because the Rhode Island Insurer's Insolvency Fund ("RIIIF") is "deemed the insurer to the extent of the obligations [under the policy] on the covered claims" under Rhode Island law, it is a "primary plan" under the MSP. United States v. RIIF, 80 F.3d 616, 623 (1st Cir. 1996). Defendant points out that the relevant Illinois and Rhode Island statutes both share similar "deem" provisions, while the California statute does not. Thus, defendant argues, this court

4

should follow the result in United States v. RIIIF instead of CIGA v. Azar.

The court disagrees with the defendant because the difference in the "deem" language between the Rhode Island and California statutes was not the basis for the difference in outcomes between those two cases. Instead, the Ninth Circuit held that, "[u]nlike the scheme at issue in [United States v. RIIIF], however, CIGA is not, and was not created to act as, an ordinary insurance company. Because CIGA's authority to disperse funds to the insured is limited to covered claims, it does not stand in the shoes of the insolvent insurer for all purposes." CIGA v. Azar, 940 F.3d at 1071 (internal citations and quotations omitted). The Ninth Circuit differentiated CIGA v. Azar from United States v. RIIIF based on the state law limitation on CIGA's authority to disperse funds rather than the "deem" provision (or lack thereof) in the Rhode Island and California statutes.

Despite the Ninth Circuit's effort to differentiate the CIGA v. Azar case from United States v. RIIIF, the First and Ninth Circuits appear to be split on the issue before this court. Both the California and Rhode Island statutes, like the Illinois statute,[1] limit the authority of their respective insurance insolvency funds to disperse funds to "covered claims." Compare United States v. RIIIF, 80 F.3d at 617-18 and CIGA v. Azar, 940 F.3d at 1071. See also R.I. Gen. Laws § 27-34-8(a)(2); Cal. Ins. Code § 1063.2. Thus, according to the logic of the decision in CIGA v. Azar, RIIIF, too, "does not 'stand in the shoes' of the insolvent insurer for all purposes." 940 F.3d at 1071.

The Seventh Circuit has not yet addressed this issue. In its opinion in IIGF v. Becerra,

---

[1] Under Illinois law the IIGF "generally steps into the shoes of the insolvent insurer when the Fund assumes the obligations on a policy, but the Fund is authorized to pay only 'covered claims' as defined by Illinois law." Illinois Insurance Guaranty Fund v. Becerra, 33 F.4th at 919

the Seventh Circuit held that, "[o]ur decision does not conflict with the Ninth Circuit's decision in [CIGA v. Azar]. The Ninth Circuit determined that the California insolvency insurer was not a primary plan and was not subject to demands for repayment under the Medicare Secondary Payer Act. Those issues are not presented in this appeal." 33 F.4th at 926 (7th Cir. 2023) (internal quotations omitted).

This court concludes that the Ninth Circuit has the better of the split. As discussed above, insurance insolvency funds designed to be sources of last resort do not fit the statutory definition of "primary plan" in the MSP. At least with regard to CIGA, IIGF, and RIIIF, the argument that the insurance insolvency funds step into the shoes of insolvent primary insurers for all purposes is not supported by the state statutes governing them. Consequently, the court concludes that IIGF is not a "primary plan" under the MSP statute.

## CONCLUSION

For the above reasons, the court grants IIGF's motion for summary judgment (Doc. 22) and denies defendant's cross-motion for judgment on the administrative record (Doc. 28). The decision of the ALJ is, therefore, reversed. Judgment is entered in favor of Illinois Insurance Guaranty Fund, and against Secretary Xavier Becerra.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: January 17, 2025**